EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Marcelino Meléndez La Fontaine | 2006 TSPR 22<br><br>166 DPR \_\_\_\_ |

Número del Caso: CP-2003-2

Fecha: 9 de febrero de 2006

 Abogado del Peticionario:

                  Lcdo. Tadeo Negrón Medero

Oficina del Procurador General:

                  Lcda. Noemí Rivera De León<br>                  Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Marcelino Meléndez La Fontaine          CP-2003-2

PER CURIAM

San Juan, Puerto Rico, a 9 de febrero de 2006

La conducta que da lugar a la presente acción disciplinaria tiene su origen en el caso *Jiménez Lugo y otros v. Meléndez La Fontaine*, KAC 1994-1417, donde se litigaba contra el querellado una reclamación por incumplimiento contractual y daños y perjuicios, adjudicado ante el Tribunal de Primera Instancia, Sala Superior de San Juan. El foro primario, al dictar sentencia concluyendo que el Lcdo. Marcelino Meléndez La Fontaine había incumplido su contrato de servicios profesionales, ordenó que la transcripción de la vista en sus méritos fuera elevada a este Tribunal.

I

El licenciado Meléndez La Fontaine suscribió un contrato de servicios profesionales con los miembros de la Sucesión de Arturo Jiménez Sánchez. Mediante el mismo se comprometió a representar a todos los herederos en cualquier procedimiento relacionado con la liquidación del caudal relicto del señor Jiménez Sánchez. Acorde con las obligaciones contraídas, el licenciado Meléndez La Fontaine, entre otras gestiones, tramitó la de declaratoria de herederos, el relevo correspondiente del Departamento de Hacienda referente al caudal relicto del finado, así como una instancia dirigida al Registro de la Propiedad para inscribir a nombre de la Sucesión Jiménez Sánchez un inmueble sito en Río Piedras (única propiedad inmueble existente en el cauda hereditario). La propiedad fue inscrita a favor de la Sucesión Jiménez Sánchez en común pro indiviso.

Antes de llevarse a cabo la partición de los bienes hereditarios, el heredero Ángel L. Jiménez Sánchez junto a su hijo, Sr. Jaime Jiménez Lugo, adquirieron de los demás miembros de la sucesión la aludida propiedad localizada en Río Piedras.[1] Para autorizar la correspondiente escritura de compraventa, Meléndez La Fontaine quien no era notario,

---

[1] El Sr. Jaime E. Jiménez Lugo no suscribió el contrato de servicios profesionales existente entre el Lic. Marcelino Meléndez La Fontaine y los miembros de la Sucesión de Don Arturo Jiménez Sánchez. Ello pues, éste advino a ser heredero del causante cuando murió su padre, el Sr. Ángel L. Jiménez Sánchez.

le recomendó a sus clientes la contratación del notario José E. Rivera Reyes.

A tales efectos, el licenciado Meléndez La Fontaine suministró la documentación necesaria y pertinente para preparar del documento público. Así pues, el notario Rivera Reyes otorgó la escritura pública número treinta (30) el 20 de abril de 1990, donde comparecieron los vendedores ––miembros de la Sucesión Jiménez Sánchez–– **como dueños de porciones específicas dentro de la finca en cuestión.[2] El licenciado Meléndez La Fontaine revisó el documento antes de su otorgamiento.**

Al expedir la primera copia certificada de la escritura de compraventa, el licenciado Meléndez La Fontaine le informó al notario que había acordado con los herederos que retendría la escritura en su oficina hasta tanto se culminara liquidación y adjudicación de los bienes del caudal relicto. Cuando ello ocurriera, se procedería a preparar la documentación necesaria a los fines de reconocer el por ciento de participación de cada uno de los herederos y, entonces, se presentaría en el Registro de la Propiedad la escritura de compraventa otorgada ante el notario Rivera Reyes.

Así las cosas, el comprador Jiménez Lugo acudió a la oficina del licenciado Rivera Reyes para que se le

---

[2] A pesar de que el notario inquirió sobre el modo en que se habían establecido las participaciones y sobre los documentos complementarios que sustentaran tal actuación, el licenciado Meléndez La Fontaine adujo tener toda la información necesaria para la validez del documento.

expidiera copia certificada de la escritura de compraventa. Sin embargo, el notario le explicó que el documento solicitado no iba a ser presentado ante el Registro de la Propiedad hasta que finalizara la liquidación de los bienes del causante. A insistencias del señor Jiménez Lugo, el notario Rivera Reyes expidió segunda copia certificada de su escritura número treinta (30) de 1990. El señor Jiménez Lugo presentó para su inscripción en el Registro de la Propiedad, Sección III de San Juan.

La escritura número 30 no logró acceso al Registro de al Propiedad. Entre los defectos notificados se señaló que no se podía inscribir enajenaciones o gravámenes de cuotas específicas en una finca en la que no se hubiere adjudicado antes la correspondiente participación de los herederos.

Para subsanar los defectos de la escritura, ambos abogados se reunieron con los miembros de la sucesión. Estas gestiones resultaron infructuosas puesto que algunos herederos se negaron a firmar la misma. En consecuencia, el Sr. Jaime Jiménez Lugo, instó una demanda ante el Tribunal de Primera Instancia contra los miembros de la sucesión, para que éstos otorgaran la escritura de cesión de derechos y bienes a favor de los demandantes y se inscribiera el inmueble a su nombre. El tribunal de instancia declaró con lugar la demanda.

Aduciendo haber sufrido daños por los hechos antes relatados, el 27 de noviembre de 1991, el señor Jiménez Lugo presentó una queja ante este Tribunal en contra de los licenciados Rivera Reyes y Meléndez La Fontaine (AB-1991-

60). El 21 de febrero de 1992, dictamos una Resolución en la cual declinamos el ejercicio de nuestra jurisdicción disciplinaria y se ordenó el archivo de la queja, "sin perjuicio de que el señor Jiménez Lugo acuda a un procedimiento civil ordinario para reclamar la reparación de los daños" alegadamente sufridos por parte de los letrados.

El 8 de enero de 1993, el Sr. Jaime Jiménez Lugo y su esposa, Sra. Aramita J. Rodríguez Galloza, incoaron una demanda ante el Tribunal de Primera Instancia en contra del licenciado Meléndez La Fontaine sobre incumplimiento de contrato y daños y perjuicios, en relación con las gestiones de éste durante la tramitación de la liquidación de la Sucesión de don Arturo Jiménez Sánchez.

Luego de varios incidentes procesales que no es necesario detallar, el foro primario dictó sentencia en la cual concluyó que el licenciado Meléndez La Fontaine incumplió con sus obligaciones. No empece lo anterior, dicho tribunal no concedió una partida de daños alguna. El foro primario indicó lo siguiente:

> No habiendo el Lcdo. Meléndez La Fontaine cumplido en su totalidad con las obligaciones a las que se comprometió mediante el contrato de servicios profesionales y por tal razón habiendo causado daños al aquí co-demandante Jiménez Lugo, procedería una indemnización por incumplimiento contractual. No obstante lo anterior y habiendo abundante testimonio creído por el Tribunal a los fines de que el proceso desde sus inicios con la declaratoria de herederos se omitieron herederos a pesar de su conocida existencia para la parte demandante, este Tribunal en este caso no puede efectuar determinación alguna adjudicando daños ya que el acto jurídico original que da base a todo este entramado sucesoral estuvo viciado y es

nulo; por lo que sin eficacia la razón de pedir del demandante.

Por último, el foro de instancia refirió el caso ante este Tribunal para nuestra consideración. Dicha sentencia advino final y firme.

Así las cosas, referimos el asunto a la atención del Procurador General para que investigara y sometiera el informe de rigor. Posteriormente, ordenamos la presentación de la correspondiente querella. En la misma, se le imputó al licenciado Meléndez La Fontaine el siguiente cargo:

> El Lcdo. Marcelino Meléndez La Fontaine incurrió en conducta profesional en violación al Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C.18, el cual, entre otras cosas, obliga a todo abogado defender los intereses de su cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

En su contestación, el licenciado Meléndez La Fontaine, en esencia, rechazó haber incurrido en conducta violatoria de los Cánones de Ética Profesional toda vez que no fue él quien otorgó la escritura de compraventa número treinta (30), antes mencionada. Además, adujo no haber errado ya que, "como cuestión de derecho, ni la ley ni la jurisprudencia exigen que cuando los herederos son todos mayores de edad y se ponen de acuerdo con la partición y división de la herencia, se tenga que preparar documento alguno, ni escritura alguna de partición y liquidación de tal herencia". Finalmente cuestionó, escuetamente, nuestra jurisdicción disciplinaria bajo el fundamento que, mediante

nuestra Resolución del 21 de febrero de 1992, donde declinamos ejercer nuestra jurisdicción disciplinaria en la queja presentada contra el aquí querellado por estos hechos, ya habíamos dispuesto de la misma.

Atendida la querella presentada y la contestación del abogado querellado, designamos al Lcdo. Enrique Rivera Santana como Comisionado Especial. Después de celebrada la correspondiente vista evidenciaria, el Comisionado Especial rindió su informe. **El Comisionado Especial concluyó que el querellado incurrió en violación del Canon 18 de los Cánones de Ética Profesional.** En el Informe se recomendó que de optarse por disciplinar al querellado, se considerara los siguiente: que los hechos eran remotos; el querellante carecía de "manos limpias"; el querellante no pudo establecer haber sufrido daño alguno; la propiedad fue inscrita en el Registro de la Propiedad a nombre del querellante; y, finalmente, que la acción disciplinaria fue dirigida únicamente contra el licenciado Meléndez La Fontaine, dejando fuera al autor de la escritura de compraventa por la cual se activó la maquinaria judicial.

Con el beneficio del informe del Comisionado Especial y de los documentos que obran en autos, resolvemos.

II

A

Debemos atender brevemente un asunto relacionado a nuestra jurisdicción disciplinaria traído ante nuestra consideración por el abogado querellado. Como se indicó previamente, éste entiende que la querella presentada trata

de los mismos hechos por los cuales se presentó la primera querella el 27 de noviembre de 1991, por lo cual el asunto ya fue atendido por este Tribunal. En dicha querella, el señor Jiménez Lugo nos solicitaba que ordenáramos a los abogados allí querellados --licenciados Meléndez La Fontaine y Rivera Reyes-- a preparar un documento que pudiera ser inscrito en el Registro de la Propiedad y, además, se nos informaba sobre los daños que alegadamente había sufrido. En aquel momento entendimos que no debíamos ejercer nuestra jurisdicción disciplinaria, sino que procedía que el caso se ventilase bajo un procedimiento civil ordinario.

Nuestra actuación no tuvo el efecto de abdicar nuestro poder inherente de reglamentar la profesión de la abogacía y disciplinar a aquellos abogados que incurran en prácticas o conducta reñida con los Cánones de Ética Profesional. Por el contrario, el asunto sobre la titularidad de un bien inmueble y su correspondiente inscripción en el Registro de la Propiedad, es un asunto que debe ser dilucidado mediante un juicio plenario ante nuestros tribunales de instancia. Nuestra intervención sería a destiempo. Asimismo, los daños y perjuicios que sufra una parte por las actuaciones negligentes o el incumplimiento de contrato de otra es un asunto a dilucidar ante el foro de instancia.

Ahora bien, nada impide que luego de la determinación del Tribunal de Primera Instancia adjudicando este asunto, como ocurrió en el presente caso, la conducta del abogado sea referida a nuestra atención nuevamente. Recordemos que

aún cuando el abogado logre resarcir los daños causados a un cliente por sus actuaciones negligentes, este Tribunal tiene el ejercicio final de la jurisdicción con relación a la negligencia profesional del abogado. *In re Pagán Ayala*, 117 D.P.R. 180 (1986). En consecuencia, procede que atendamos en los méritos el cargo presentado por el Procurador General contra el licenciado Meléndez La Fontaine.

B

El Canon 18, *supra*, le impone a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Este deber es infringido cuando asume una representación legal consciente de que no puede rendir una labor idónea competente o que no puede prepararse adecuadamente para el caso sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia. *In re Meléndez Figueroa*, res. 15 de noviembre de 2005, 166 D.P.R. _____, 2005 T.S.P.R. 177; *In re Marini Román*, res. 6 de octubre de 2005, 165 D.P.R. _____, 2005 T.S.P.R. 148.

Reiteradamente hemos establecido que todo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. *In re Meléndez Figueroa*, supra; *In*

*re Martínez Miranda*, res. 18 de septiembre de 2003, 160 D.P.R. ____, 2003 T.S.P.R. 149. Su gestión profesional debe llevarse a cabo aplicando en cada caso sus conocimientos y habilidades. *In re Alonso Santiago*, res. 13 de septiembre de 2005, 165 D.P.R. ____, 2005 T.S.P.R. 137; *In re Grau Díaz*, 154 D.P.R. 71 (2001).

Los abogados, como oficiales del Tribunal, tienen una función revestida de gran interés público que genera obligaciones y responsabilidades duales para con sus clientes y con el tribunal en la administración de la justicia. *In re Ortiz Morales*, res. 8 de noviembre de 2005, 166 D.P.R. ____, 2005 T.S.P.R. 199. Ello les impone el deber de asegurarse que sus actuaciones dentro de cualquier caso en que intervengan estén encaminadas a lograr que las controversias sean resueltas de una manera justa, rápida y económica. *In re Vélez Barlucea*, 152 D.P.R. 298 (2000).

En *In re Díaz Alonso*, 115 D.P.R. 755, 761 (1984) expresamos que los abogados tienen la obligación ética de informarse adecuadamente del derecho aplicable en los litigios en que interviene, en aras de poder descargar de forma responsable sus obligaciones para con su cliente. Véase además, *In re Alonso Santiago*, res. 13 de septiembre de 2005, 165 D.P.R. ____, 2005 T.S.P.R. 137.

A la hora de imponer sanciones disciplinarias podemos considerar factores como la reputación del abogado en su comunidad, el historial previo de éste, si es su primera falta, la aceptación de la falta y su sincero

arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras consideraciones, bien sean atenuantes o agravantes que medien según las circunstancias particulares del caso. *In re Quiñones Ayala*, res. 30 de junio de 2005, 164 D.P.R. ____, 2005 T.S.P.R. 99; *In re Montalvo Guzmán*, res. 20 de mayo de 2005, 164 D.P.R. ____, 2005 T.S.P.R. 82.

III

En el presente caso, el Lcdo. Marcelino Meléndez La Fontaine tenía encomendado llevar a cabo cualquier procedimiento judicial o administrativo que culminase en la partición final de la herencia del causante. La querella presentada gira específicamente en torno a la escritura de compraventa número treinta (30) otorgada por el licenciado Rivera Reyes, mediante la cual se disponía del único bien inmueble que poseía el caudal hereditario.

Si bien es cierto que no fue el licenciado Meléndez La Fontaine quien otorgó el referido documento, no es menos cierto que fue éste quien calculó las proporciones específicas que cada miembro vendería en la propiedad y se las entregó al notario, con conocimiento de que todavía no se había adjudicado la herencia. Además, participó en la preparación de la escritura y la revisó previo a la firma de sus clientes. Además, obtuvo copia certificada de la misma inmediatamente fue otorgada por el licenciado Rivera Reyes. No obstante lo anterior, el querellado no se percató que el referido documento público no cumplía con

los requisitos legales para su otorgamiento por lo cual no lograría acceso al Registro de la Propiedad.

Como resultado del problema para la inscripción de la escritura número treinta (30) se generó un litigio en los tribunales. Eventualmente se logró la inscripción de la escritura de compraventa no sin antes las partes haber tenido que litigar el asunto, incurriendo así en gastos y contratiempos innecesarios.

Sorprende además, que en su contestación el querellado señale que la escritura número treinta (30) no adolecía de defecto alguno. Ello, de suyo, denota un total desconocimiento del derecho aplicable.[3] El abogado tiene la obligación de prepararse adecuadamente para representar a sus clientes y eso incluye el asesoramiento necesario en los asuntos en que intervenga. No puede escudarse el licenciado Meléndez La Fontaine, tras la alegación de que él no preparó ni otorgó la escritura de compraventa, cuando el referido letrado estuvo al tanto del proceso y en ningún momento objetó que sus clientes --miembros de la Sucesión

---

[3] Durante la comunidad hereditaria cada partícipe puede enajenar su cuota abstracta, así también se puede vender la cosa específica antes de la partición cuando todos los herederos dan su consentimiento. No obstante, la Ley Hipotecaria, en su Artículo 95, claramente señala que "no se inscribirán enajenaciones o gravámenes de cuotas específicas en una finca que no se hayan adjudicado antes en la correspondiente partición". 30 L.P.R.A. sec. 2316. Véase además, *Kogan Huberman v. Registrador*, 125 D.P.R. 636 (1990). En la presente situación de hechos, todos los comuneros estaban de acuerdo, en un principio, en vender el bien inmueble que poseían en común pro indiviso. Por tanto, no podía representarse en la escritura que cada miembro enajenaba una cuota específica en el referido inmueble, puesto que ello contraviene el derecho hereditario y está vedado por el Artículo 95 de la Ley Hipotecaria, *supra*.

de Arturo Jiménez Sánchez- firmaran un documento cuya validez era cuestionable.

En consecuencia, resolvemos que el licenciado Meléndez La Fontaine incumplió con los deberes éticos exigidos en el Canon 18, al no defender diligentemente los intereses de sus clientes. Si hubiese velado por los intereses de los miembros de la sucesión, ciertamente, se hubiese percatado de los defectos que adolecía la escritura de compraventa por ellos suscrita. Con ello, se hubiese evitado que se vieran todos involucrados en un pleito judicial. El abogado tiene la obligación ética de informarse adecuadamente del derecho aplicable a los asuntos bajo su consideración. *Pueblo v. Miranda Colón*, 115 D.P.R. 511 (1984). El abogado que no se siente capacitado para llevar a cabo una encomienda o debe asumir la representación legal de una persona. *In re Laborde Freytes*, res. 27 de junio de 2003, 159 D.P.R. ___, 2003 T.S.P.R. 126.

En virtud de lo anterior, como medida disciplinaria y por tratarse de una primera ofensa, entendemos procedente amonestar al Lcdo. Marcelino Meléndez La Fontaine por la conducta impropia incurrida en el presente caso. Éste deberá en el futuro ejercer mayor cautela y mostrar mayor conocimiento del derecho aplicable para atenerse a los postulados que regulan la profesión de la abogacía. Se le apercibe contra futuras infracciones.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Marcelino Meléndez La Fontaine          CP-2003-2

SENTENCIA

San Juan, Puerto Rico, a 9 de febrero de 2006

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, como medida disciplinaria y por tratarse de una primera ofensa, entendemos procedente amonestar al Lcdo. Marcelino Meléndez La Fontaine por la conducta impropia incurrida en el presente caso. Éste deberá en el futuro ejercer mayor cautela y mostrar mayor conocimiento del derecho aplicable para atenerse a los postulados que regulan la profesión de la abogacía. Se le apercibe contra futuras infracciones.

Lo pronunció, manda el Tribual y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió una Opinión Disidente a la cual se le une el Juez Asociado señor Rivera Pérez. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

*In re*

Marcelino Meléndez La Fontaine

CP-2003-2

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ A LA CUAL SE UNE EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ

San Juan, Puerto Rico, 9 de febrero de 2006

<u>No</u> podemos suscribir la Opinión Per Curiam que emite el Tribunal en el presente caso. Somos del criterio que, dados los <u>hechos particulares</u> del mismo, <u>no</u> procede la imposición de medida disciplinaria alguna contra el Lcdo. Marcelino Meléndez La Fontaine. Veamos porqué.

En nuestro criterio, el referido abogado hizo lo que tenía que hacer, al enfrentarse a una situación en la que él estaba impedido de actuar. Es decir, no siendo notario, recomendó a sus clientes la contratación de un abogado que sí estuviera admitido a la práctica de la Notaría. Meléndez La Fontaine <u>no</u> debe responder por la actuación negligente, o ignorante, del otro abogado. Aquí <u>no</u>

se puede aplicar la teoría, o doctrina, sobre *"culpa in eligendo"*.

Por otro lado, <u>no</u> se le puede imponer responsabilidad a Meléndez La Fontaine porque éste, alegadamente, debía haberse percatado de que la escritura otorgada, por el otro abogado, era defectuosa. Meléndez La Fontaine, repetimos, <u>no</u> era notario. Así lo hizo saber a sus clientes. Él <u>no</u> hizo representación alguna de que era un experto, o conocedor, en el campo de la Notaría.

Tal parece que el Tribunal está aplicando, en relación con nuestra jurisdicción disciplinaria, la hoy desacreditada y desechada doctrina del "capitán del barco", la cual fue utilizada en el campo de daños y perjuicios por impericia médica. Conforme a la misma, en apretada síntesis, el cirujano a cargo de la intervención quirúrgica respondía por los actos negligentes de <u>todas</u> las personas involucradas en la misma.

Somos del criterio que, al resolver que el abogado original a cargo del caso es responsable de la actuación negligente o equivocada de otro abogado, <u>traído al caso para realizar una gestión profesional especializada</u>, el Tribunal no sólo establece un precedente erróneo sino que envía un mensaje equivocado a la profesión. El erróneo precedente causará que el abogado que actúa responsablemente, al solicitar los <u>servicios especializados</u> de un colega para beneficio de su cliente, resulte responsable de la actuación negligente del especialista.

¿Para qué hacerlo, entonces? ¿Vale la pena actuar ética y responsablemente?

En fin, somos de la opinión que por menor que sea la sanción impuesta en el presente caso --una amonestación-- la misma resulta ser injusta. Ese fue el mensaje que el Comisionado Especial, en forma elegante, nos envió, al expresar que, al resolver este caso, deberíamos tomar en consideración que: el querellante carecía de "manos limpias"; que éste no sufrió daño alguno; que la propiedad efectivamente fue inscrita en el Registro de la Propiedad a nombre de dicha persona; y que, únicamente, se intenta disciplinar a Meléndez La Fontaine y no al verdadero responsable de la situación, el notario que otorgó la escritura. Al "buen entendedor, con pocas palabras basta".


FRANCISCO REBOLLO LÓPEZ
Juez Asociado